**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:11–cv-131-RJC**

| | | |
|---|---|---|
| **DARRYL WILLIAM COLEMAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **JUDY BRANDON,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Respondent's Motion for Summary Judgment on each claim raised by Petitioner in his Petition for Writ of Habeas of Corpus, filed under 28 U.S.C. § 2254. For the reasons that follow, Respondent's Motion for Summary Judgment will be granted. (Doc. No. 4).

## I.    BACKGROUND

Petitioner is a prisoner in the custody of the State of North Carolina who is currently confined in the Caswell Correctional Institution. Petitioner was represented by counsel and convicted following a trial by jury in the Lincoln County Superior Court, the Honorable Jessie B. Caldwell, III, presiding. Petitioner was convicted of one count of statutory sex offense, one count of a sex act by a custodian, and four counts of indecent liberties with a minor child. Petitioner was sentenced to 230-285 months on the statutory rape charge; 29-44 months upon conviction of the charge of sex act by a custodian, to run consecutive to the first sentence; two of the indecent liberties convictions were consolidated for judgment with the statutory sex offense conviction. On the remaining two indecent liberties convictions, Petitioner was sentenced to a suspended term of 15-18 months, and Petitioner was ordered to be placed on supervised

probation for 36-months upon his release, which is projected to occur on September 11, 2029, according to the website of the North Carolina Department of Public Safety. See State v. Coleman, 200 N.C. App. 696, 697-99, 684 S.E.2d 513, 514-16 (2009).

Petitioner noted a timely appeal to the North Carolina Court of Appeals and Petitioner's appellate counsel raised several arguments challenging his conviction and sentence which will be discussed in detail below. Following a review of the case, on November 3, 2009, the Court rejected all of Petitioner's arguments and affirmed his convictions and sentence in a published opinion. The Court of Appeals summarized the facts from Petitioner's trial:

> In June 2006, defendant was employed by Kingspoint Academy ("Kingspoint") at a boys' group home ("the boys' home") in Lincolnton, North Carolina. Kingspoint also operated a girls' group home ("the girls' home") in Shelby, North Carolina. Defendant, who was 40 years old at the time, worked at the boys' home on the weekends.

> On 25 and 26 June 2006, "Allen", who was 15 years old, and "Jordan," who was under 16 (collectively "the boys") lived in the boys' home along with five other boys. During the same time period, defendant worked the 8:00 p.m. to 8:00 a.m. shift and "Kelsey," "Dana," and "Taylor" (collectively "the girls") lived at the girls' home. Kelsey was 14 years old and Dana was 15 years old. On 25 June 2006, the girls left the girls' home without permission. The girls previously met Allen and some of the other boys from the boys' home at a Kingspoint summer camp. The girls called Jordan on the telephone, told him they were coming over to the boys' home, and defendant was informed of the girls' plans.

> When the girls arrived at the boys' home, Allen and Jordan were outside playing basketball. Defendant was also present and told the girls to return when the rest of the staff was asleep. The girls went to a friend's house and got drunk. Later that evening, the girls, still intoxicated, returned to the boys' home. After the girls entered the boys' home through the downstairs windows, defendant told them they could spend the night but that they had to be quiet so they would not awaken the staff. Defendant, Kelsey, and Allen stayed in Allen's room on the first floor of the home.

> During the evening, defendant told Dana that she had nice breasts and then touched her breasts. Defendant told Kelsey she had to show him her breasts if she wanted to spend the night. Defendant then touched her breasts. Next, he told Allen to leave the room and when Allen returned, Kelsey was naked. Kelsey performed fellatio on defendant. Subsequently, Allen had sexual intercourse with Kelsey in Allen's room. During the course of Allen and Kelsey's sexual activity with each other, defendant left and

re-entered the room repeatedly and watched them having sex. Defendant told Allen, referencing Kelsey, "that's my baby[,] don't hurt her, ... do her right...."

Early in the morning of 26 June 2006, the girls left the boys' home by climbing out the back window. Taylor called her mother, who picked up the girls. When the girls returned to the girls' home, they went to the office. Dana eventually revealed that they went to the boys' home and described the sexual activity that took place between defendant and Kelsey and between the boys and girls.

Officers of the Lincolnton Police Department ("officers") interviewed the boys and girls. Kelsey admitted she had sex with Allen while defendant watched, that defendant fondled her breasts and that defendant asked for fellatio, which she performed on him. Dana told the officers that defendant told the girls to leave the boys' home and return after the staff was asleep. She further stated defendant felt her breasts, that she saw Kelsey and Allen having sex, and saw Kelsey perform fellatio on defendant and on Jordan. Allen admitted he had sex with Kelsey while defendant watched, and that he also saw defendant grab Kelsey's breast.

On 30 June 2006, defendant voluntarily contacted the officers to give a statement. He was advised of his Miranda rights and signed a written waiver. Defendant admitted that on the evening in question, he saw both Jordan and Allen each having sex with one of the girls in the boys' group home. Defendant added that after Allen finished having sex with one girl, defendant touched her breast and she performed fellatio on him. Defendant then stated he touched another girl's breast.

Defendant was arrested and charged with statutory rape, statutory sex offense, engaging in a sex act by a custodian, and four counts of indecent liberties with a minor. He was subsequently indicted on all charges except statutory rape. Defendant filed a motion to suppress his statement to the police. The trial court denied the motion.

All charges were joined for trial, which commenced on 19 May 2008 in Lincoln County Superior Court. At the close of the State's evidence and at the close of all the evidence, defendant moved to dismiss each of the charges due to the insufficiency of the evidence. The trial court denied both motions.

Coleman, 200 N.C. App. at 697-99, 684 S.E.2d at 513-16.

The Supreme Court of North Carolina denied discretionary review of the Opinion of the Court of Appeals on April 14, 2010. State v. Coleman, 364 N.C. 129, 696 S.E.2d 527 (2010).

On July 1, 2011, Petitioner filed a pro se motion for appropriate relief ("MAR") in the Lincoln County Superior Court. On July 20, 2011, the Honorable Forrest D. Bridges entered an

Order denying Petitioner's claims for relief. <u>See</u> (Doc. No. 6-13).[1] On August 9, 2011, Petitioner filed a pro se petition for writ of certiorari with the North Carolina Court of Appeals, and this petition was denied by Order entered August 26, 2011. (Doc. Nos. 6-14, 6-16). On or about September 8, 2011, the Clerk's Office for the Western District reported receiving a Section 2254 petition from Petitioner on September 2, 2011. The petition was returned to Petitioner for failure to pay the $5.00 filing fee and Petitioner was informed that he would need to remit the filing fee or mail a completed motion to proceed *in forma pauperis* along with his Section 2254 petition. (Doc. No. 1-9).

On September 15, 2011 Petitioner again filed a Section 2254 petition, signed under penalty of perjury on August 30, 2011 (Doc . No. 1 at 14). The Court then conducted an initial review of the petition and ordered the Respondent to file a response or answer. Respondent filed a motion for summary judgment, (Doc. No. 4), and Petitioner was advised, in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (1975), of his obligation in responding to the motion for summary judgment. (Doc. No. 8). Petitioner filed his response and a cross-motion for summary judgment, (Doc. No. 13), and a motion to include additional pages in his response. (Doc. No. 11).

The Court has examined all pending motions, and as noted above, the Court finds that Respondent's Motion for Summary Judgment should be **GRANTED**. The Court finds that Petitioner's Motion for Leave to File Excess pages should be **ALLOWED**, and Petitioner's cross-motion for summary judgment will be **DENIED**.

## II.  STANDARD OF REVIEW

---

[1]All citations to the documents filed in this civil case will be referenced by the page number which appears on the bottom footer as provided by the Clerk's ECF system.

A.      Summary Judgment

Summary judgment is appropriate in cases where there is no genuine dispute as to a

material fact and it appears that the moving party is entitled to judgment as a matter of law.

United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying summary judgment to motion

to vacate). Any permissible inferences which are drawn from the underlying facts must be

viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v.

Zenith Radio Corp. 475 U.S. 574, 587-88 (1986). However, when the record taken as a whole

could not lead a trier of fact to find for the non-moving party, granting summary judgment is

appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

B.      Section § 2254 Review

In addition to the standard for summary judgment noted above, the Court notes the

review of the federal courts is restricted by the express language of 28 U.S.C. § 2254, as

amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and the

controlling Supreme Court precedents. Section 2254(d) provides the following:[2]

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication of the
> claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the Supreme
>> Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the
>> facts in light of the evidence presented in the State court proceeding.

---

[2]Petitioner raises several claims that the determinations of the various state courts to
consider his challenges to his convictions and sentences violate the North Carolina Constitution.
That claim is not cognizable in a Section 2254 action because habeas relief can only be granted
for violations of "clearly established Federal law."

"Federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." Calderon v. Thompson, 523 U.S. 538, 555-556 (1998). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Section 2254(d), as amended by the AEDPA, "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunction in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington, 131 S. Ct. at 786 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-787.

III. **DISCUSSION**

    A. **First Claim for Relief: the trial court erred in failing to dismiss the charge of sexual offense by a custodian due to insufficiency of the evidence in violation of Petitioner's Due Process rights as protected by the United States and North Carolina Constitutions**

Petitioner raised this argument before the trial court at the close of the State's evidence through a motion to dismiss citing insufficiency of the evidence. This motion was denied and Petitioner raised this issue on direct appeal to the North Carolina Court of Appeals. The court of appeals rejected this argument after finding that there was more than sufficient evidence to

support the conviction. The Court found:[3]

> The charge of sex offense by a custodian is defined in pertinent part as:

>> If ... a person having custody of a victim of any age or a person who is an agent or employee of any person, or institution, whether such institution is private, charitable, or governmental, having custody of a victim of any age engages in vaginal intercourse or a sexual act with such victim, the defendant is guilty of a Class E felony. Consent is not a defense to a charge under this section.

N.C. Gen.Stat. § 14–27.7(a) (2007).

> In the instant case, the State presented substantial evidence on each and every element of N.C. Gen.Stat. § 14–27.7(a) and that defendant was the perpetrator. During the relevant period, defendant was employed by Kingspoint, a corporation, at a boys' group home. At that time, Kelsey was living at a girls' group home operated by Kingspoint. Kelsey performed fellatio on defendant while he worked at his job with Kingspoint.

> Defendant further argues the trial court erred in denying his motion to dismiss because the State failed to show defendant knew or should have known Kelsey was in Kingspoint's custody. Defendant believes that knowledge that he was the custodian should be a requirement of the charge of sex offense by a custodian. We disagree.

Coleman, 200 N.C. App. at 701, 684 S.E.2d at 517.

Petitioner's argument in this habeas proceeding contends that the State failed to prove that

Petitioner was employed by the same agency that had custody of the minor child at issue.

"Additionally, the State failed to present any evidence that defendant knew or should have

known [the minor] was from another group home in a different city and that the group from

which she left was operated by the same corporate entity employing the defendant." (Doc. No. 1

at 19).

The court of appeals engaged in a lengthy analysis of the statute and noted that "[t]he

legislature's purpose in enacting N.C. Gen. Stat. § 14-27.7 was 'prevention of sexual abuse by

---

[3]The court of appeals refers to the minor children by pseudonyms to protect their identities.

institutional personnel of persons in an institution's care.'" The court found that "[a]ccording to the plain language of N.C. Gen. Stat. § 14-27.7, the State is not required to present evidence that a defendant knew or should have known the victim was in his custody or in the custody of the principal or employer." Coleman, supra. The court then examined similar laws prohibiting sexual contact between a custodian and a minor confined to a group home or institution and noted, excepting three states, more than "[f]orty jurisdictions have at least one criminal provision outlawing the abuse of a position of power to obtain sexual intercourse." Id. at 702, 684 S.E.2d at 518 (quoting Patricia J. Falk, Rape by Fraud and Rape by Coercion, 64 Brook. L. Rev. 39, 102 (1998), and citing various state statutes).

The court of appeals found that in the "instant case, based on our analysis above, the State was not required to present evidence of defendant's knowledge of the victim's status or condition in order to secure a conviction. Defendant's assignment of error is overruled." Id. at 704, 684 S.E.2d at 519. The Supreme Court of the United States has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) and Mullaney v. Wilbur, 421 U.S. 684, 691 (1975)).

Accordingly, this Court is bound by the State court's interpretation of § 14-27.7 unless the state law would be in violation of Petitioner's due process rights as protected by the Fourteenth Amendment. Petitioner makes no argument in this respect except to allege in a conclusory fashion that his due process rights were violated. (Doc. No. 1 at 19). The Court has examined the record in this matter and concludes that Petitioner's due process claims are without merit. The evidence presented at trial overwhelmingly demonstrated that Petitioner knew that the minor children were in custody in a group home which was owned by his employer, although the home was located in

a neighboring county. Further, Petitioner does not seriously challenge the evidence of his sexual involvement with the minor children. The Court concludes that the state court's ruling on this issue was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. 28 U.S.C. §§ 2254(d)(1) and (d)(2). This argument is overruled.

**B.    Second Ground for Relief: the trial court erred in failing to dismiss the two charges of indecent liberties due to the insufficiency of the evidence in violation of rights to Due Process under the United States Constitution.**

Petitioner moved to dismiss these indecent liberties charges at the close of the State's evidence contending there was insufficient evidence to support the convictions. The motion was denied and the court of appeals rejected his claim that the trial court erred in making its ruling. The court of appeals found as follows:

> sexual acts with Allen and/or Jordan and/or watched Kelsey engage in sexual acts with other juveniles. The third count was based on allegations the defendant encouraged, facilitated, and/or aided Allen to engage in sexual acts with Kelsey and/or watched such sexual acts.
>
> The elements of indecent liberties with a minor are:
>
> (1) the defendant was at least 16 years of age; (2) he was five years older than his victim; (3) he willfully took or attempted to take an indecent liberty with the victim; (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire. State v. Thaggard, 168 N.C.App. 263, 282, 608 S.E.2d 774, 786–87 (2005); N.C. Gen. Stat. § 14–202.1 (2007). "[S]exual gratification may be inferred from the evidence relating to the defendant's actions." State v. Ainsworth, 109 N.C.App. 136, 146, 426 S.E.2d 410, 416 (1993). When an adult who has a custodial relationship with a child watches that child engage in sexual activity with another person or facilitates such activity, the adult's actions constitute indecent liberties with a minor. Id. at 147, 426 S.E.2d at 417.
>
> In the instant case, defendant told Kelsey she had to show her breasts as a condition for her to stay at the boys' home. Defendant then fondled Kelsey's breasts and removed her bra. Defendant left Allen's room and when he returned he saw Kelsey and Allen engaged in sexual intercourse. During this time, defendant repeatedly left and re-entered Allen's room to watch Kelsey and Allen have sex. At the time of the above incidents, defendant was 40 years old, and Allen and Kelsey were both under 16 years old. Substantial evidence

sustained the jury verdicts of guilty of indecent liberties with a minor.

Defendant argues that there was insufficient evidence to support two convictions based on the above stated acts because the two counts were not two separate criminal acts because they arose from a single transaction.

Coleman, 200 N.C. App. at 705-06, 684 S.E.2d at 519-20.

A challenge to the sufficiency of the evidence in a state court proceeding raises a due process claim under the Fourteenth Amendment. "Federal-court challenges to the evidentiary support for state convictions have since Thompson been dealt with under § 2254." Jackson v. Virginia, 443 U.S. 307, 321 (1979) (citing Thompson v. City of Louisville, 362 U.S. 199, 204 (1960) (finding that federal due process requires that there must be evidence in the record to support a conviction at issue). "Most meritorious challenges to constitutional sufficiency of the evidence will undoubtedly be recognized in state courts, and, if the state courts have fully considered the issue of sufficiency, the task of a federal habeas court should not be difficult." Id. at 322.

The court of appeals adjudicated this claim on the merits by concluding there was substantial evidence to support the two convictions at issue. After a review of the record, the Court agrees that the evidence of Petitioner's guilt of the crimes of indecent liberties was overwhelming and clearly sufficient to sustain the convictions he now challenges on habeas review. Petitioner has failed to show any entitlement to relief under Section 2254(d)(1) or (d)(2) in this habeas proceeding. This argument is overruled.

**C.    Third Ground for Relief: the trial court erred in its instructions to the jury when it led them to believe that acquittal on all counts was not an option.**

In his charge to the jury, the trial court stated the following:

Now, members of the jury, as you know, we're trying a number of cases in one trial. There are a total of six cases that you will consider. Each case, members of the jury, will be considered separately and individually as though there were six different trials focusing on that one charge alone. Members of the jury, your verdict in any one case will not affect or

be related to the verdict in any of the other five cases. <u>Thus, you may find the defendant guilty on all counts, you may find the defendant guilty on all counts, or you may find the defendant guilty on some counts and not guilty on some counts.</u>

<u>Coleman</u>, 200 N.C. App. at 706, 684 S.E.2d at 520-21.

As is plain from the second phrase in the instruction underlined above, the trial court neglected to include the word "not" in front of guilty. The result is a duplicative instruction that twice charges the jury that they may find Petitioner guilty on all six counts. However, it is obvious that this was clearly inadvertent. As the court of appeals noted,

> [T]he trial court made this *lapsus linguae* only once and subsequently corrected the charge with further instructions to the jury. In its subsequent instructions on each charge, the trial court stated that there two possible verdicts in each case– the jury could find the defendant guilty or not guilty. Moreover, when the trial court instructed the jury on the elements of each charge, the court stated that if the jury found from the evidence, beyond a reasonable doubt, that defendant committed the elements of the crimes charged, the jury had a duty to return a verdict of guilty. If the jury did not so find or if it had a reasonable doubt as to one or more of the elements, the jury had a duty to return a verdict of not guilty.

<u>Id.</u> at 707, 684 S.E.2d at 521.

Petitioner contends that by giving this instruction to the jury, the trial court violated his rights to equal treatment and due process under the Fourteenth Amendment. (Doc. No. 1 at 20). The Court disagrees. Petitioner raised this argument on direct appeal. The court of appeals noted that Petitioner did not raise an objection to this instruction at trial and rejected his argument after concluding, in applying plain error analysis, there was no reasonable possibility that the jury would have reached a different result in the absence of the trial court's challenged instruction.

The court of appeals adjudicated Petitioner's present argument on the merits. The Court finds after considering the court's opinion and reviewing the trial court's charge to the jury, that there is no possibility that the jurors were under the impression, or "misled" as Petitioner contends, by the trial court's instruction. (Doc. No. 6-23: Trial Court's Jury Instructions at 60-61, 67-73). It is clear

that the instructions continually corrected the trial court's unintentional omission of the word "not" before guilty in the second phrase. As the court of appeals found, the trial court repeatedly informed the jury that they had the duty to reach a decision of guilty or not guilty as to each of the six charges. Petitioner has failed to show that the court of appeals decision on this issue was in violation of his federal constitutional rights. § 2254(d)(1). This argument is therefore overruled.

  **D.**   **Fourth Ground for Relief: the trial court erred in failing to instruct the jury that in deciding whether Petitioner was guilty of the charge of sex by custodian under N.C. Gen. Stat. § 14-27.7, the jury must be convinced beyond a reasonable doubt that Petitioner knew the minor victim was in the custody of an institution at the time of the sexual offense.**

  The substance of this claim was addressed, <u>supra</u> at 6-9. Petitioner raised this claim before the court of appeals and the court resolved the claim on the merits. The court reiterated its conclusion that Petitioner's knowledge that the minor child was in his custody was not required. The court concluded that "assuming *arguendo* the defendant had requested such an instruction, since it would not have been "correct in law," the trial court would not have been required to give such an instruction." <u>Coleman</u>, 20 N.C. App. at 708-09, 684 S.E.2d at 521-22 (internal citation omitted). The undersigned finds that the court of appeals decision on this issue does not run afoul of the Fourteenth Amendment, as Petitioner contends, and Petitioner's argument is overruled. For the reasons stated above, the Court will deny and dismiss this claim.

  **E.**   **Fifth Ground for Relief: Petitioner contends his appellate counsel was ineffective for not requesting that the case be remanded to the trial court for findings of fact and conclusions of law on the motion to suppress filed by his trial counsel.**

  Petitioner did not raise this argument on direct appeal but he did raise the argument in the MAR proceeding. The Honorable Forrest D. Bridges found that this argument was "baseless." Judge Bridges noted from the record that Judge David Cayer–now a Federal Magistrate Judge in this

District–presided over Petitioner's motion to suppress. Judge Bridges found that Petitioner's argument was "simply incorrect. . . . Judge Cayer included findings of fact and conclusions of law in his order denying the Defendant's suppression motion." (Doc. No. 6-13: Order Denying MAR at 2-3). Petitioner filed a petition for writ of certiorari from the MAR Order, and this was denied by the court of appeals by Order entered on August 9, 2011.

The Court finds that the MAR court adjudicated this claim on its merits. Following conclusion of the evidence at the suppression hearing, Judge Cayer made findings of fact in open court that cover three pages of the transcript of the hearing, and then concluded as a matter of law that Petitioner's statement to law enforcement, which was the object of the motion to suppress, was made knowingly and voluntarily. The court therefore denied the motion to suppress. (Doc. No. 6-18: Transcript of Motion to Suppress Hearing at 31-34).

Petitioner contends that his appellant counsel was ineffective in failing to move the court of appeals to remand the case to the trial court for entry of a written order detailing the trial court's findings of fact and conclusions of law. (Doc. No. 1 at 22). This error, as Petitioner characterizes it, violated his rights to due process and equal treatment under the United States Constitution. (Id.).

Respondent argues that Judge Bridges' Order denying the MAR was on the merits and thus precludes habeas review because it was neither contrary to nor did it involve "an unreasonable application of federal law, as determined by the Supreme Court of the United States, i.e. Strickland. Nor is it based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings." (Doc. No. 6 at 23).

Petitioner provides no argument as to how his appellant counsel's failure to challenge the trial court's alleged error in failing to enter a written order memorializing the ruling on his motion to suppress was prejudicial. Appellate counsel is entitled to make reasonable choices as to which

arguments he or she thinks have the best chance of succeeding on appeal. To that end, appellate counsel is not required to raise all issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000). Moreover, in choosing which issues to pursue, appellant counsel "is entitled to a presumption that he decided which issues were most likely to afford relief on appeal." <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993). Appellate counsel noticed an appeal of the trial court's denial of the defendant's motion to suppress his confession, but he did not pursue this in his brief on appeal. (Doc. No. 6-5: Record on Appeal at 37). Consequently, the court of appeals deemed this argument abandoned and therefore did not address it. <u>Coleman</u>, 200 N.C. App. at 709, 684 S.E.2d at 522.

Petitioner has failed to show how his appellant attorney's failure to raise this argument represents a violation of clearly established, Supreme Court precedent.  This argument is therefore denied and dismissed.

> **G.     Seventh Ground for Relief: the trial court committed reversible error by introducing Defendant's alleged prior out-of-court statement into evidence when Defendant did not testify during trial. The trial court further erred by failing to make proper findings before allowing the prior statement into evidence thereby denying Defendant a fair trial and his rights to due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendment.**

Petitioner did not raise this issue on direct appeal although he did raise this issue in his MAR. The MAR court found that "[t]his argument is directed toward a ruling by the trial court upon the admissibility of evidence. The Defendant's failure to assert this argument during his direct appeal now operates as a bar to the presentation of this argument in connection with this Motion for Appropriate Relief." The MAR court found that Petitioner was therefore not entitled to any relief. (Doc. No. 6-13 at 3). Respondent argues that this is an invocation of North Carolina's mandatory post-conviction procedural bar, and as such, Petitioner is barred from having this issue considered

in this habeas proceeding. (Doc. No. 6 at 24).

Under North Carolina law, the failure of a defendant to raise an issue which they were in a position to raise on direct appeal represents a permissible ground for denying a motion for appropriate relief. See N.C. Gen. Stat. § 15A-1419(a)(3). Clearly the MAR court applied this procedural bar in denying this claim for relief. The Fourth Circuit has "repeatedly held" that G.S. 1419(a)(3) is both an "adequate" and "independent" procedural rule. Sharpe v. Bell, 593 F.3d 372, 377 (4th Cir. 2010).

Petitioner does not contend that this issue could not have been raised on appeal. The Court finds that the MAR court's finding of procedural default is properly pled as a bar to consideration of this claim on habeas review. "A federal habeas court 'does not have license to question a state court's finding of procedural default' or to question 'whether the state court properly applied its own law.'" Id. (quoting Barnes v. Thompson, 58 F.3d 971, 974 n.2 (4th Cir. 1995)). Petitioner has not shown cause and prejudice to excuse this default, McCarver v. Lee, 221 F.3d 583, 591–92 (4th Cir. 2000), nor has he raised a claim of actual innocence. See Sharpe, 593 F.3d at 377. This argument is procedurally defaulted and will be denied and dismissed.

### H. Eighth Claim for Relief: Appellate counsel was ineffective for failing to raise a Confrontation Clause issue under the Sixth Amendment of the United States Constitution

Petitioner did not raise this issue on direct review and does not contend that he was not in a position to do so. Petitioner did raise this issue in his MAR. In denying Petitioner's claim, the MAR court noted that Petitioner's appellate counsel included this issue in his assignments of error but declined to argue the issue in his brief to the court of appeals resulting in the issue being abandoned on direct review. (Doc. No. 6-13 at 3; see Doc. No. 6-5: Assignments of Error in Record on Appeal at 38). The Court noted its concurrence with appellate counsel's decision to abandon this

argument and found that the argument was baseless. (Doc. No. 6-13 at 3). Respondent argues for application of the procedural bar to prevent Petitioner from having this claim considered on the merits in this habeas proceeding.

Petitioner contends that this issue was not raised because his appellate counsel failed to do so. In considering Petitioner's claim of ineffective assistance of appellate counsel, the Court must consider whether counsel's performance was deficient and if so, whether this performance caused prejudice to Petitioner. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In examining counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. In order to demonstrate prejudice, Petitioner has the burden of demonstrating a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with errors of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 142, 170 (1982)).

Petitioner argues that he was prejudiced by his appellate counsel's failure to pursue a Confrontation Clause claim. During trial, the State's first witness was Detective Jason Munday of the Lincoln County Police Department. Det. Munday testified that he spoke with Officer Riddle about a report Riddle had filed. As Munday began to testify regarding his conversation with Riddle, Petitioner's trial counsel noted an objection contending that conversation was inadmissible hearsay. The trial court sustained the objection and the State explained that the conversation was not offered for the truth of the matter asserted, rather the conversation was offered to explain the officers' action in conducting their investigation into the allegations that became the basis for Petitioner's criminal prosecution. (Doc. No. 6-19: Trial Transcript at 20-21). Petitioner's trial counsel stated that he did not wish to be heard further on his objection to this testimony and the trial court overruled the

objection and gave the jury a limiting instruction: "Members of the jury this evidence is being allowed not to prove the truth of the matter asserted but typically to what this particular witness did following [hearing the information from Riddle]." (Id. at 21). The substance of Riddle's conversation with Munday was that a report was received that an employee of Kingspoint Academy group home for children performed sexual acts with one or more of the children there and that he threatened to cause the children bodily harm if they told anyone about it. (Id.).

Petitioner's argument is without merit. This short summation of the report by Riddle to Munday did not identify anyone by name and was simply offered to explain what Munday did next, which was to make arrangements to talk with the victims and possible witnesses. During the course of the investigation Munday learned from the owner of Kingspoint that Petitioner was employed there and had been identified as the employee that had the sexual contact with the children.

"The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U.S. 36, 59 (2004). In Crawford the Court held that,

> [w]here testimonial statements are involved, we do not think that the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability." . . To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It command, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.

Crawford, 541 U.S. at 61.

The Court finds that the limiting instruction properly informed the jury that Riddle's summation was not offered, nor to be considered for its truth, rather it could only be considered to explain Munday's subsequent investigation. Thus, appellate counsel's decision was not unreasonable. Nor did it prejudice Petitioner's appeal. The evidence presented at trial against

Petitioner, through testimony and documentary evidence, in particular his detailed confession, was overwhelming and any error in not pursuing a Confrontation Clause argument was harmless.

Petitioner has failed to show that the MAR court's decision to deny relief on this issue resulted in a decision contrary to Supreme Court precedent or that the decision resulted in an unreasonable determination of the facts from the state court proceeding. § 2254(d)(1) and (d)(2). This argument is overruled.

I.  **Ninth Ground for Relief: Appellate counsel was ineffective for failing to raise the issue of the erroneous and prejudicial admission of non-corroborative and inadmissible hearsay statements of the victims to the police detectives in violation of the United States Constitution.**

The Court would first note that Petitioner's argument that the admission of this testimony, and appellate counsel's failure to challenge such admission on appeal in violation of the United States Constitution, is simply too broad to alert this Court to the true nature of the rights Petitioner contends were violated. Nevertheless, the Court will turn to an examination of the record before the state courts. As indicated by Petitioner, this issue was not raised on appellate review. Petitioner did raise this issue in his MAR and the state court held as follows:

> This argument by the Defendant is directed toward a ruling by the trial court on the admissibility of evidence. The Defendant's failure to assert this argument during his direct appeal operates as a bar to the Defendant's assertion of this claim as part of his Motion for Appropriate Relief. This argument does not entitle Defendant to any relief.

(Doc. No. 6-13 at 3).

Respondent argues that the procedural bar should apply. In the alternative, Respondent maintains that Judge Bridges' decision was on the merits of the claim and his ruling should be sustained. (Doc. No. 6 at 28-29).

The Court agrees that the MAR Order serves as a decision on the merits. The Court next considers whether that decision would violate § 2254(d)(1) or (2). First, the Court finds that §

2254(d)(2) does not apply in this case. Rather, the question to be resolved is whether Judge Bridges' ruling runs afoul of established precedent from the Supreme Court of the United States. § 2254(d)(1).

As this Court has noted , the evidence against Petitioner was overwhelming and the argument that he was prejudiced by what he contends were prejudicial and inadmissible statements made by the victims to the investigating officers is simply without merit. Petitioner's trial counsel objected to the officers' testimony and each time the trial court provided a limited instruction that the jury could consider the testimony only for corroborative purposes. If the jury found that the testimony was corroborative of the victims' later testimony, then the jury could consider the officers' testimony only for that limited purpose of corroboration. For example, Det. Munday testified regarding his interview of one of the female victims. Trial counsel objected stating that he understood that the victim would be testifying later in the trial. The objection was overruled and the court provided the jury a limiting instruction which directed them to consider Munday's statements regarding his interview with the victim only for corroborative purposes. This victim did in fact testify later in the trial, as did the other victim. (Doc. No. 6-19: Trial Transcript at 36-39).

Petitioner has failed to show error on the part of his appellate counsel. As previously discussed, appellate counsel is entitled to great leeway when deciding what issues to pursue on appeal. Appellate counsel is not required to raise all issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). Given the overwhelming evidence, the Court cannot find that the MAR court's order denying relief on this ground violates § 2254(d)(1). This argument is therefore overruled.

**J.     Tenth Ground for Relief: the trial court erred in denying defendant's motion to present evidence under North Carolina Rule of Evidence 412 concerning prior sexual acts of the victims in violation of Petitioner's right to equal**

**treatment and due process under the U.S. Constitution.**

Petitioner did not raise this issue on direct appeal, but he did raise it in his MAR. Judge Bridges summarily denied the claim on the basis of procedural bar because the claim could have been raised on direct appeal. Next, Judge Bridges denied the claim on the merits. "[T]he Defendant's argument concerning the admissibility of prior sex acts of the victims is absolutely incorrect. Rule 412 should never be applied in the manner urged by the Defendant. This argument does not entitle Defendant to any relief." (Doc. No. 6-13 at 4).

The Court finds that Petitioner's claim is procedurally barred. First, Petitioner does not contend that his appellate counsel was ineffective for failing to raise and argue this issue on appeal. Therefore, it appears that Petitioner could have raised this claim before the court of appeals but he failed to do so. Second, Judge Bridges concluded as a matter of law that Petitioner's argument regarding the inclusion of information regarding the sexual history of the minor children was clearly erroneous.

Rule 412 of the North Carolina Rules of Evidence provides in pertinent part:

> b)    Notwithstanding any other provision of law, the sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:
>
> (1)    Was between the complainant and the defendant; or
>
> (2)    Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or
>
> (3)    Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or
>
> (4)    Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or

acts charged.

N.C. Gen. Stat. § 8C-1, Rule 412(b).

Judge Bridges' ruling on this issue is a ruling by a state court on an issue of state law. As the Court

has previously observed, "[a] federal habeas court 'does not have license to question a state court's

finding of procedural default' or to question 'whether the state court properly applied its own law.'"

Sharpe, 593 F.3d at 377 (quoting Barnes v. Thompson, 58 F.3d 971, 974 n.2 (4th Cir. 1995)). This

claim is denied and dismissed.

**K.    Eleventh Ground for Relief:**

> **1.    Appellate counsel was ineffective for failing to raise a challenge to the testimony of a juvenile court counselor which Petitioner contends tended to vouch for the credibility of one of the minor victims.**
>
> **2.    Appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel. Petitioner contends his trial counsel's questions to one of the minor victims regarding the veracity of a juvenile court counselor undermined the fairness of his trial.**

Petitioner raised the first issue in his MAR. In his Order denying Petitioner relief, Judge

Bridges concluded,

> even if Defendant's appellate counsel should have raised this ground during his direct appeal, the evidence against the Defendant in this case, including his voluntary confession, was so overwhelming that any failure to raise this argument was not prejudicial to the Defendant. Any failure by appellate counsel to raise this argument was harmless beyond a reasonable doubt in view of the overwhelming evidence of the Defendant's guilt. This argument does not entitle Defendant to any relief.

(Doc. No. 6-13 at 4).

The state court decided this issue on the merits and concluded that even assuming attorney error,

Petitioner could not have suffered prejudice through his counsel's failure to raise this ground before

the court of appeals because of the overwhelming nature of the evidence of Petitioner's guilt.

As to the second issue raised, the MAR court concluded that Petitioner was procedurally

barred from relief on this issue because he failed to raise the issue on direct appeal. This ruling may fail to appreciate that Petitioner's habeas claim is that his appellate counsel was ineffective for failing to raise the issue on appeal, therefore, cause exists to excuse the procedural bar.

To be entitled to relief, Petitioner must show that his counsel–trial and appellate–committed such errors that reach the level of "constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 142, 170 (1982)). The Court has considered the state court determination as it pertains to his appellate counsel and finds that this ruling does not present a conclusion which is contrary to established federal law as that law is defined by the United States Supreme Court. § 2254(d)(1).

Petitioner's burden in establishing Strickland prejudice is two-fold. First, Petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by constitutionally deficient representation. Strickland, 466 U.S. at 687-91. The Court finds that the state court's determination on Petitioner's claim against his appellate counsel should be upheld. "The pivotal question is whether the state court's application of the Strickland standard was unreasonable." Harrington v. Richter, 131 S. Ct. 770, 785 (2011). While the state court does not reference Strickland in its Order, the court is obviously adjudicating a constitutional claim of ineffective assistance of counsel in denying Petitioner relief on his claim attacking his appellate counsel's performance. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). In the present case, the state court's finding that no matter the claim raised by appellate counsel, the outcome on appeal would not have changed, is not an unreasonable conclusion and does not violate any clearly established Supreme Court precedent. Petitioner cannot show that he was prejudiced by his appellate

counsel's failure to raise this issue on appeal. This argument is overruled.

The state court applied procedural bar to preclude Petitioner from relief on his claim against his appellate counsel's failure to raise a challenge to his trial counsel's performance. Petitioner contends that his trial counsel was ineffective in cross-examining one of the minor victims and asking questions which Petitioner contends sought to bolster the veracity of the juvenile court counselor. Petitioner's argument is that these questions undermined confidence in the outcome of his trial, and therefore Petitioner was denied a fair trial. This argument is without merit.

The overwhelming nature of the evidence presented at trial, including Petitioner's voluntary, written confession and the testimony of the minor victims, precludes a prejudice finding. The evidence fully supports the jury's verdict, and any error on the part of his trial counsel in his method of cross-examining the minor victim could not have had an impact on the fundamental fairness of the trial. This argument is overruled.

**L.    Twelfth Ground for Relief: the trial court erred when imposing consecutive sentences in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.**

Although Petitioner claims that he "preserved review in the higher courts, that the trial court erred when imposing consecutive sentences," there is no evidence in the record that this argument was raised on direct appeal. (Doc. No. 1 at 30). Petitioner's appellate counsel did not raise this issue in his assignments of error and there was no mention of this issue by the court of appeals. (Doc. No. 6-5: Record on Appeal at 37-38). Petitioner did raise this issue in his MAR. Judge Bridges denied this claim for relief on the merits and concluded that this "argument by the Defendant is simply wrong. The sentences entered by Judge Caldwell were within the permissible range of punishment and entirely consistent with the laws of North Carolina pertaining to sentencing for these particular offenses. This argument does not entitle Defendant to any relief." (Doc. No. 6-13 at 4).

Petitioner's argument is that his consecutive sentences impose multiple punishments for the same offense in violation of the Double Jeopardy Clause. "Where a multiple-punishment-for-single-offense claim of double jeopardy is made, the first inquiry-perhaps one preliminary to true constitutional inquiry-is whether as a matter of legislative intent there are involved single or multiple offenses, i.e., whether the legislature intended that an arguably single or continuous criminal episode could result in multiple 'units of prosecution' based upon particular factors of time or other circumstances dividing the whole into discrete parts." Thomas v. Warden, Md. State Penitentiary, 683 F.2d 83, 84 (4th Cir. 1982) (quoting United States v. Johnson, 612 F.2d 843 (4th Cir. 1979)). This is an unreviewable question of North Carolina statutory construction.

The state court ruled against Petitioner and therein interpreted North Carolina's sentencing laws. Petitioner could only be entitled to habeas relief on this claim if he could show that the state court's ruling on this issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." § 2254(d)(1). See, e.g., Williams v. Taylor, 529 U.S. 362, 412 (2000). As noted herein, "[a] federal habeas court 'does not have license to question a state court's finding of procedural default' or to question 'whether the state court properly applied its own law.'" Sharpe, 593 F.3d at 377 (quoting Barnes v. Thompson, 58 F.3d 971, 974 n.2 (4th Cir. 1995)).

Petitioner also argues that the trial court erroneously enhanced his sentence "beyond the prescribed statutory maximum" . . . "without stating his reasons to do so on the record." (Doc. No. 1 at 31). Petitioner further contends that the provision of the North Carolina sentencing scheme under which he was sentenced is unconstitutional. Under N.C. Gen. Stat. § 15A-1340.15, upon multiple convictions, the law provides that "[t]his article does not prohibit the imposition of consecutive sentences." § 15A-1340.15(a). There is simply no Supreme Court precedent which supports Petitioner's arguments regarding the imposition of consecutive sentences. As the state court

24

found, all of the individual sentences were within the permissible range, and the trial court did not make findings of fact and impose an aggravated sentence for any of the convictions. This argument is denied and dismissed.

## IV.    CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment as to each of Petitioner's claims.

**IT IS, THEREFORE, ORDERED** that:

1.    Petitioner's Motion for Leave to File Excess Pages is **GRANTED**. (Doc. No. 11).

2.    Petitioner's Cross-Motion for Summary Judgment is **DENIED**. (Doc. No. 13).

3.    Respondent's Motion for Summary Judgment is **GRANTED**. (Doc. No. 4).

4.    Petitioner's Petition for Writ of Habeas Corpus is **DENIED** and **DISMISSED**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right). Petitioner has failed to make the required showing.

Signed: September 19, 2012

Robert J. Conrad, Jr.
Chief United States District Judge